**SWITZER et al. v. MILLS et al.**

No. 7672.

Court of Civil Appeals of Texas. Austin.

Feb. 10, 1932.

Rehearing Denied March 9, 1932.

Dibrell & Starnes, of Coleman, for plaintiffs in error.

Baker & Baker, of Coleman, for plaintiff in error D. D. Derrick.

W. Marcus Weatherred, of Coleman, for defendants in error R. A. Carroll and Jno. L. Sims.

BLAIR, J.

The parties will be designated herein as appellants and appellees.

This litigation arose out of the following facts and transactions:

Appellant H. G. Switzer owned certain lots, and, desiring to erect four residences thereon, deeded some of them to R. L. Cope and others to J. W. Bowers, with agreements that they would each execute mechanic's lien building contracts for two residences on the respective lots conveyed to them, with appellant as contractor, the contract price for each building to be $2,250, or a total price of $9,000 for the four buildings. The building contracts were accordingly executed, and the mechanic's liens were transferred by appellant to the Temple Trust Company, under agreement that it would advance the $9,000 for the improvements; and Cope and wife and Bowers and wife executed their respective deeds of trust to the Temple Trust Company to better secure payment of the $9,000. Appellant subcontracted the erection of the four buildings to B. A. Mills, who agreed to erect them for the $9,000. In October, 1927, while Mills was erecting the buildings, Cope and wife and Bowers and wife reconveyed the property to appellant, each deed reciting a cash consideration of $10, and that appellant take the property subject to all indebtedness against it. Appellant admitted that all transactions between himself and Cope and Bowers were simulated, made for the purpose of handling the transactions with the Temple Trust Company; and that he was owner of the property at all times. Appellant testified that during October, 1927, he paid Mills the total sum of $275.52; and introduced in evidence four checks aggregating that amount, payable to Mills or for him. Appellant further testified that on November 2, 1927, while each of the parties mentioned below was present, the followed occurred: Cope and wife and Bowers and wife made affidavits of acceptance of the buildings. Appellant as contractor made affidavits that all claims for labor and material used in the erection of the buildings had been paid. These affidavits were delivered by appellant to the agent for the Temple Trust Company, who delivered appellant the company's four checks for $2,250, each, aggregating $9,000, in payment of the improvements. At the request of subcontractor Mills, appellant indorsed three of these checks to South Texas Lumber Company, in payment of the lumber and material furnished in the erection of the buildings. These three checks totaled $6,750, which was more than the lumber company's claim; and the lumber company executed two checks to appellant, one for $875 and one for $885, for the difference. There was no specific evidence as to the amount of the lumber company's claim, but subtracting the amount of its two checks from the amount of the three Temple Trust Company checks would show the claim to be $4,990. Appellant indorsed and delivered the two lumber company checks, aggregating $1,760, to Mills, as payment on his contract; and also indorsed and delivered to Mills the remaining Temple Trust Company check for $2,250. Appellant further testified that earlier in the day of November 2, 1927, he delivered to Mills a check for $1,000, drawn by appellant's wife, payable to appellant, and indorsed by him. On the same day, November 2, 1927, Mills cashed this $1,000 check and probably the two lumber company checks, aggregating $1,760, and, after apparently depositing the Temple Trust Company check for $2,250 for collection, absconded without paying appellees the amounts due them for their labor and material as follows: To appellee R. A. Carroll, for labor and plumbing, $1,260.00; to John L. Sims, for surfacing floors, $71.45; and to D. D. Derrick, for painting, $310.

After appellant learned that Mills had absconded, he stopped payment on the four Temple Trust Company checks; but there-

after instructed said company to pay all except $1,045 of the $9,000. Appellant claimed that $5,500 of the $9,000 went to pay the claim of the lumber company. No explanation was made as to why this claim was greater than the claim settled on November 2, 1927, when the lumber company was apparently paid $4,990. Appellant claimed that $1,000 of the $9,000 reimbursed his wife for her $1,000 check; and as to what became of the balance, except the $1,045, appellant made no explanation other than the four checks paid during October, 1927, and the general statement that he made total payments to Mills or his order of $8,560.52, prior to receiving the written notices of the claims of appellees, leaving a balance of $439.48 owing Mills on his contract. The Temple Trust Company paid the $1,045 into court and prayed that it be distributed to the parties entitled to it.

At the time appellant made the affidavits that all claims for labor and material had been paid, he knew that appellees had not been paid, but did not know the amounts of their claims. He further testified that under his arrangement with Mills he made the affidavits in order to get the money to turn over to Mills for the purpose of paying these claims; that Mills had built several houses before these for appellant under similar arrangements; and that he trusted Mills to pay his own employees, as he had formerly done. The amounts of appellees' claims are not questioned; and appellant was served with written notice of the claims of appellees Carroll and Sims on November 5, 1927, and later with Derrick's claim; and each filed their mechanic's, laborer's or materialman's lien with the county clerk.

Appellant alleged and here contends that the evidence detailed showed he had paid all of the contract price for the four buildings, except $439.48, at the time he received the written notices of the claims of appellees, which amount by his pleadings he tendered into court. By their cross-actions appellees alleged, and by cross-assignments of error here contend: (a) That, at the time they served appellant with written notices of their claims, he had on hand funds due Mills sufficient to pay their claims in full; and (b) that appellant knew the claims of appellees had not been paid, but nevertheless made false affidavits that all claims had been paid, thereby obtaining full payment from the Temple Trust Company of the amount it agreed to advance for the improvements; that appellant could not thus fraudulently obtain the funds and thereby defeat the claims of appellees; but that appellant was therefore personally liable for the full amount of their claims.

These issues were tried to the court without a jury, and the trial court found that appellees' claims were valid, and ordered that the $1,045 deposited by the Temple Trust Company be distributed pro rata to them; but denied appellees judgment against appellant for the balance of their claims.

■ The evidence above detailed sufficiently supports the findings and judgment of the trial court; and the contentions of both appellants and appellees are not sustained. Appellant alone knew to whom the $9,000, except the $1,045 deposited in court, had been paid. His accounting of it was very indefinite and unsatisfactory. He left in the hands of the Temple Trust Company $1,045 with which to satisfy claimants; and this fact, standing alone and unexplained, sustains the findings of the trial court that that amount was due Mills on his contract when appellees served written notices of their claims on appellant.

■ Nor do we sustain appellees' contention that, because appellant made the false affidavits that all claims had been paid, appellant should be held personally liable for appellees' claims in full. Manifestly these false affidavits were not the cause for appellees not being paid by their own employer Mills, who alone was primarily liable to them for their claims. Appellant was not obligated by any contract to pay appellees. His liability for their claims arises by virtue of chapter 2, title 90, R. S. 1925 (article 5452 et seq.) relating to mechanics, contractors, and materialmen; and particularly under article 5469, which required appellant to retain 10 per cent. of the contract price of the buildings for thirty days after completion with which to pay mechanics and artisans for labor furnished the contractor or subcontractor in the erection of the buildings; and under article 5454, which provides that the service of written notices of claims of laborers or materialmen for labor or material furnished a contractor or subcontractor will impound in the owner's hands the amount then due or thereafter to become due the contractor or subcontractor on the building contract. Since the court found that there remained $1,045 in the hands of the owner at the time appellees served him with written notices of their claims, the statute providing for retention of 10 per cent. of the contract price by the owner need not be discussed. And with respect to the false affidavits, they had nothing to do with Mill's failure to pay appellees. Clearly appellant had the right, except as to the statutory requirement, to retain 10 per cent. for thirty days, to pay Mills the amount due him on his subcontract, and to trust him to pay his own employees for their labor and material; and, upon his failure to do so, appellees could only fix the liability of appellant for their claims under the provisions of the statutes above referred to.

■ After the deposit of the $1,045 into the registry of the court by the Temple Trust

Company, appellant filed his motion, and on ex parte hearing was allowed to withdraw the $1,045 upon making bond for double the amount, payable to the defendants in the suit, which bond appellant filed with the other appellants herein as sureties, on April 19, 1928. When appellees learned of this withdrawal of the funds they moved to require appellants to repay it into court, and the court so ordered; but appellants have refused to comply with the order. Judgment was accordingly rendered against said appellants, requiring them to pay the $1,045, with interest at the rate of 6 per cent. from the date of the bond to date of the judgment, into the registry of the court, to be distributed in accordance with the judgment herein. Appellants contend that the judgment for the 6 per cent. interest is erroneous. Article 5454, R. S. 1925, provides that, where claims like appellees are filed with the owner of the building, he shall notify the contractor of such claims, and, if the contractor does not within ten days contest the claims, then the owner shall himself pay them "when due," out of funds in his hands belonging to the contractor. Clearly, with respect to appellees' claims, and in view of the simulated and other contracts here involved, Mills held the position of contractor and appellant the position of owner, under the subcontract to erect the four buildings for appellant. By his own conduct Mills, as contractor, deprived himself of the right to have ten days' notice of the claims of appellees; and appellant should have at the end of the ten-day period paid appellees pro rata the $1,045 due Mills on his contract. For wrongfully withholding this money from appellees, they were entitled to judgment from the date "when due" under the statute, supra, with interest at the rate of 6 per cent. to date of the judgment in the trial court, and on that judgment until paid. Appellant's sureties on the bond for withdrawal of the $1,045 are therefore liable for the interest from and after the date of their bond obligation to repay the $1,045; and the judgment allowing such interest against them is correct.

■ The judgment of the trial court decreed that all costs incurred herein, including a fee of $20 for an attorney to represent Mills, who was served with citation by publication, should be paid first out of the $1,045 and the interest thereon. Appellees cross-assign error as to these costs. Clearly these costs should have been taxed against appellant H. G. Switzner. First, under the terms of article 2216, R. S. 1925, because appellees were successful in establishing their cross-actions against appellant. He brought the suit and alleged that he owed Mills a balance of only $439.48 on his contract. Appellees alleged and proved themselves entitled to $1,045 as the balance due Mills on his contract; and as successful parties they are entitled to recover their costs of suit. McCormick Harvesting Co. v. Gilkey (Tex. Civ. App.) 23 S. W. 325.

■ Second, article 5463, R. S. 1925, required appellant as contractor to defend the owner of the property against the claims of appellees at his own costs. Under his simulated and other contracts here involved, appellant held the novel and dual position of both contractor and owner as regards the contracts for building the four residences; and in this dual position was compelled to defend as contractor himself as owner of the buildings, and lost his suit and his costs. Because of this dual position, appellant could not as owner visit his shortcomings upon himself as contractor.

■ Further, with respect to the attorney's fees, appellant should pay them under the terms of article 2052, R. S. 1925, as "costs incurred by him." If he had prorated the $1,045 due Mills to appellees, this suit would probably not have been necessary. Besides, appellant filed the suit in the nature of a trespass to try title suit against Mills and others, and simply alleged that appellees were claiming some interest in the property or funds involved. Mills was therefore a necessary party to other phases of the suit in which appellees were not interested; and manifestly appellees should not be made to pay the costs of citing and defending Mills in those phases of the suit of interest only to appellant in clearing title to his property.

The judgment of the trial court is therefore reformed, with respect to the interest and costs in accordance with this opinion; and, as thus reformed, it is affirmed.

Reformed and affirmed.