THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY JACOBS, Defendant-Appellant.

Fourth District   No. 13868

Opinion filed August 8, 1977.

James Geis and Kathy M. Morris, both of State Appellate Defender's Office, of Chicago, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur, for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

"The *perfect* trial has yet to be tried. And we venture to suggest that it never will be. For any creation of man is merely a reflection of himself—imperfection. Consequently, there is no such thing as a *perfect* trial. All we can reasonably and logically strive for is a *fair* trial—the 'cutting edge' to our system of criminal justice." *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 1016, 287 N.E.2d 310, 312.

In contrast to *Parisie,* the trial below was so riddled with error as to effectively dull its "cutting edge."

There must be a new trial.

Jerry Jacobs was charged with rape and taking indecent liberties with a child. A Macon County jury acquitted Jacobs of rape but found him guilty of indecent liberties. Defendant timely appealed. Since defendant will receive a new trial, our discussion of the facts and the issues will be limited to those necessary for the disposition of this case. *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.

The State attempted to show that defendant forced a 12-year-old girl (babysitting at a mobile home) to lie on the trailer's bed where defendant allegedly gave the girl a "hickey" on her neck and had intercourse with her for approximately an hour and a half. Other testimony indicated that two small children lying on the same bed were asleep for the entire hour and a half, that the girl answered the door during that time but did not tell the callers of the incident, that defendant remained in the trailer after the alleged incident when the child's mother came to retrieve her and that the child, under questioning by her mother's boyfriend, at first denied knowledge of how she received the hickey before she later implicated the defendant. It was stipulated by the parties that a vaginal smear taken on the night of the incident showed no presence of sperm.

Both the child's mother and the mother's boyfriend were allowed to testify, over objection, to the details of what the child told them about the incident. The testimony was offered to show the truth of the matter asserted, *i.e.*, that Jacobs raped or took indecent liberties with the child. As such, the testimony was classic hearsay since its truth rested on the credibility of one not the witness (in this case, the child). The fact that the child would testify and be open to cross-examination is irrelevant and

does not create an exception to the proffered hearsay. The case offered by the State at trial does not support the testimony's admission.

■■ The objected hearsay testimony is admissible, if at all, as either a spontaneous declaration or a corroborative statement. The spontaneous declaration exception to the hearsay rule applies if: (1) there is an occurrence sufficiently startling to produce an unreflecting spontaneous statement, (2) there is absence of time to fabricate, (3) the statement relates to the circumstances of the occurrence. (*People v. Alexander* (1973), 11 Ill. App. 3d 782, 298 N.E.2d 355; *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) We are convinced that the child's statements to her mother and her boyfriend were not spontaneous declarations within this rule. In *Alexander* the court felt that the rape victim's statements were spontaneous when made five minutes after the defendant left her apartment and the victim was crying and visibly upset. The victim ran to a neighbor's house and when the neighbor opened the door the victim said, "[Defendant] kicked open the door and raped me."

■■ In the instant case, the child was not crying or visibly upset when her mother returned to the trailer and made no complaint at that point. Defendant was still present and, as far as the record shows, did not intimidate the child in any way. It seems logical that any statements the child made at this point might have been spontaneous, but she said nothing and went home with her mother. Even after arriving home the child said nothing. It was not until the boyfriend noticed the hickey and began to ask questions that she told the story. Applying the criteria for the exception, it seems clear that the child's demeanor was not excited enough to qualify and she had ample time to fabricate. In addition, she never offered any spontaneous statement but opened up only upon repeated questioning. The fact that the declaration comes in response to an inquiry does not automatically exclude it from the exception (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25), but considering the time lapse, and the child's lack of excitement, her conversations about the incident were not spontaneous declarations within the rule.

■■■ Under the corroborative statement exception, which applies in rape cases, statements by the victim as to what occurred, which are made at a time too remote to qualify as spontaneous declarations, may be admissible. The statements are admissible to show that something violent occurred and that the victim lodged a complaint. That complaint must be spontaneous and not made as a result of a series of questions. (*People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573.)

> "Under this rule * * * only the fact of the complaint, and not the details thereof, may be admitted into evidence, and it is necessary, before such statement is admissible at all, that the complainant be a

witness in the proceeding in which the statement is introduced."
*Damen,* 28 Ill. 2d 464, 473, 193 N.E.2d 25, 30-31.

The record clearly shows that the State went beyond showing the mere fact of a complaint being made to the mother and her boyfriend. Both testified to hearsay accounts of the details of the occurrence, which is clearly unwarranted as the rule allows the witness only to relate the fact of complaint and not even the defendant's name. *Damen.*

■■ In a case, such as this, where there is no physical evidence admitted implicating defendant and which relies solely on the victim's testimony, we find that the fact that the jury heard the child's story three times (twice without any possible effective cross-examination) is cumulative to the point where it may have contributed to the verdict and was definitely not harmless error.

■■ The next alleged error has a constitutional basis. Over defense objection, an officer testified that Jacobs wrote his age on a *Miranda* form. Several questions later, the prosecutor asked if the officer had questioned Jacobs. The officer responded, "He refused to comment on the complaint made against him." There was no defense objection to this question and answer and this point was not raised in defendant's post-trial motion. To be recognized on appeal, therefore, the error must rise to the level of plain error under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) On the basis of *People v. McDowell* (1972), 4 Ill. App. 3d 382, 280 N.E.2d 471, we find that the testimony of the officer about defendant's silence was an impermissible comment on Jacobs' *Miranda* rights and also is plain error. (See also *Monaghan; People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632.) The State's attempted explanation of the question is unmeritorious because of the earlier reference to defendant's age. On the record before us, we cannot say that the error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

■■ Before the mother testified for the State, the trial judge granted a prosecution motion in limine that defense counsel could not impeach the mother's testimony through the introduction of her recent forgery conviction. The reasons for this determination escape our comprehension and we find the ruling to be an abuse of discretion. This issue is governed by *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, and *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805. The supreme court in *Montgomery* followed proposed Federal Rule 609, pertinent portions of which are:

> "* * * For the purpose of attacking the credibility of a *witness,* evidence that he has been convicted of a crime * * * is admissible but only if the crime * * * (2) involved dishonesty or false

statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." (Emphasis supplied.) (47 Ill. 2d 510, 516, 268 N.E.2d 695, 698.)

The prosecution below offered authority in support of its contention, but a review thereof shows that the *defendant* sought to have evidence of the crime excluded. Forgery is a felony and a crime involving "dishonesty or false statement." To exclude the evidence, the prosecution must have convinced the court that the probative value of the evidence was outweighed by the danger of .unfair prejudice. When a defendant is impeached by a prior crime, the greatest danger of unfair prejudice is that the jury may convict based on defendant's prior acts or a perceived propensity to commit crime and not solely on the basis of the proof in the case at hand. (*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058.) The balancing of considerations must necessarily differ, however, when the witness to be impeached in a criminal trial is not the defendant. The mother is not on trial for any crime and we can see no use of her forgery conviction by the jury other than that which is intended by the rule, *i.e.*, to question her credibility. The *Montgomery* rule applies to all witnesses at a trial, civil or criminal (see *Knowles*). The decision by the court to exclude the mother's recent forgery conviction was an abuse of discretion. On this record, the exclusion of the evidence was not harmless.

Further in-depth comment will not be made on any other issues before us due to our reversal and remand. The following points, however, are likely to recur upon retrial: (a) At the new trial, the defendant should be allowed to fully question the child on the theory of a fabricated story; (b) we trust the trial court will not inject its opinion of a witness' credibility through its questioning, as a jury may easily be influenced thereby; (c) testimony stricken below concerning the boyfriend's relationship with the child should be tested before admission or exclusion based on its relevance to the child's credibility or motive.

As stated before, we specifically decline to address Jacobs' reasonable doubt and sentencing issues.

The whetstone has been applied; it is now up to the parties to see that the proper edge is kept on retrial.

Defendant's conviction is reversed and the cause remanded for a new trial.

Reversed and remanded.

CRAVEN, P. J., and KUNCE, J., concur.