THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS LEON MILLER, Defendant-Appellant.

Fourth District   No. 14260

Opinion filed March 17, 1978.

GREEN, P. J., specially concurring.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Phyllis Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Thomas Leon Miller, was sentenced to a term of imprisonment of 5 to 15 years after a Vermilion County jury found him guilty of a charge of indecent liberties with a child in violation of section 11—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—4).

The facts pertinent to this appeal concern events occurring on March 22 and 23, 1976. On those dates, the defendant was married to Terri Lynn Farren and resided in Danville with her and her two sons by a previous marriage. Ms. Farren put her children to bed between 8 and 10 p.m. on March 22, 1976, when the defendant was not at home. Sometime between 10 and 11 p.m., defendant returned home after which time he and his wife went to bed. During the night, Ms. Farren awakened and observed a light shining in the bathroom. When she investigated, she observed the defendant and her youngest son, a 3-year-old, standing in the bathroom. The defendant had his hands on the back of the boy's head and his penis was allegedly in the boy's mouth.

At trial, the then 4-year-old victim was found to be incompetent to testify because, although he was articulate, he was unable to recollect

dates, times, places, or other incidents. Prior to this finding of incompetence to testify, however, Ms. Farren testified that after she discovered her husband he pushed past her, exited from the bathroom, and said "I didn't do anything." Ms. Farren then testified that her young son told her, immediately after the incident, that the defendant had said to him, "Are you my buddy?" After the boy replied in the affirmative, the defendant, according to the boy, placed his penis in the boy's mouth and said, "Shhhh, don't tell Mommy."

On appeal, defendant. contends: (1) that Ms. Farren should not have been permitted to testify to hearsay statements declared by her son who was later found to be incompetent to testify; (2) that defendant was denied a fair trial as the result of incompetent counsel; (3) that the State improperly elicited testimony from Ms. Farren concerning separate criminal acts not charged in the instant case; and (4) that the prosecutor's closing argument and references to defendant's divorce on grounds of physical or mental cruelty deprived defendant of a fair trial.

■■ In Illinois, a child is not disqualified from testifying merely because of his age (*People v. Crowe* (1945), 390 Ill. 294, 61 N.E.2d 348), although our research has not disclosed any reported Illinois decision approving the testimony of a child under the age of 6. (See generally Hunter, Trial Handbook for Illinois Lawyers §31:5, at 291 (4th ed. 1972).) In 29 Am. Jur. 2d *Evidence* §728 (1967), and in Annot., 83 A.L.R. 2d 1368 (1962), it is noted that some States permit the spontaneous or *res gestae* declarations of a child of tender years to be admitted as an exception to the hearsay rule, even though the child is too young to be a competent witness, so long as the declaration may for some reason be deemed reliable. (*E.g., Johnston v. Ohls* (1969), 76 Wash. 2d 398, 406, 457 P.2d 194, 199; *State v. Hutchison* (1960), 222 Ore. 533, 542, 353 P.2d 1047, 1052; *State v. Gorman* (1949), 229 Minn. 524, 526, 40 N.W.2d 347, 348-49.) The annotations also discuss two other classes of cases—those which merely relax the rule excluding incompetent testimony by permitting the court, in its discretion, to admit testimony concerning an infant's spontaneous declarations (*e.g., McCann v. Commonwealth* (1939), 174 Va. 429, 438-39, 4 S.E.2d 768, 771; *Haley v. State* (1952), 157 Tex. Crim. 150, 154, 247 S.W.2d 400, 402) and those in which neither the incompetent's testimony nor his spontaneous declarations are allowed into evidence. (*E.g., State v. Segerberg* (1945), 131 Conn. 546, 551-52, 41 A.2d 101, 103-04.) Wigmore not only favored the admission of an incompetent child's *res gestae* statements but he also favored a total abolition of the testimonial disqualification for infancy. (2 Wigmore, Evidence §509, at 600-01 (3d ed. 1940); 6 Wigmore, Evidence §1751, at 223 (Chadbourn rev. 1976).) McCormick thought exclusion of a child's testimony for incompetence

was both "inept and primitive." McCormick, Evidence §62, at 140-41 (2d ed. 1972).

In *People v. Crews* (1969), 42 Ill. 2d 60, 244 N.E.2d 593, our supreme court reduced a murder sentence from death to 20 to 35 years' imprisonment. The sentence concerned a defendant's conviction for the murder of a 2-year-old girl she was seeking to adopt. At the sentencing hearing from which the appeal was taken, the court found that the defendant's then 6-year-old son was incompetent to testify. The sentencing court, however, still permitted a foster mother, with whom the boy had been placed, to testify that the boy told her that the defendant punished the murder victim with a belt and with more severity than he had ever been punished by her. The supreme court stated: "Permitting this material to be elicited from the witness was clearly improper." (42 Ill. 2d 60, 64, 244 N.E.2d 593, 595.) The court's statement in *Crews*, however, is not controlling in the instant case because the boy's statement in *Crews* occurred an unknown period of time after the murder and could not in any way be characterized as a spontaneous or *res gestae* declaration.

Our research has uncovered only one other reported Illinois decision which discusses the admissibility of the spontaneous or *res gestae* declarations of `a child of tender years. In that case, *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485, the defendant had been charged with the shotgun slaying of her husband. At some time shortly after the shooting, defendant called to her neighbors for help, saying that her 3-year-old son, Linden, had shot his father. Ten minutes after the neighbors arrived, the defendant, her two children, and a neighbor entered an automobile where the defendant said: " 'Linden, what did you shoot daddy for,' and he replied 'I didn't shoot daddy. You shot daddy and I am going to shoot you.' " 401 Ill. 68, 71, 81 N.E.2d 485.

At the trial in *Willson*, young Linden was not offered as a witness, however, his remarks were offered through another witness and constituted the sole testimony on which the defendant was convicted. In reversing the defendant's conviction, the court stated:

> "The People do not indicate upon what ground they considered the statements made by a three-year-old child competent or proper evidence upon which to convict a person of murder.
>
> * * * [But,] the People seem to believe the statements of the child, Linden Lee, were admissible as part of the *res gestae*. The true inquiry in determining whether certain actions or words constitute a part of the *res gestae* is whether the declarations are a verbal act, illustrating, explaining or interpreting other parts of the transaction of which they are themselves a part, or merely a history of a completed past affair. In one case they are competent; in the

other they are not. [Citations.] In the present case when the first witness arrived the homicide was complete. At once the defendant and he started in a car to reach the witness's father. After they had gotten into the car, some minutes later, the defendant initiated the conversation by inquiring of her son why he had shot his father, and the incriminating answer of the child was not something that came spontaneously from him, as a part of the action in the house, but in answer to the mother, who indicated he had done something in the house. It lacked two elements necessary to come within the rule: First, it was not spontaneous, but was induced by a question; and second, because it is narrative or historical of a past event. The same is true in every other instance where the accusation of the child was repeated to other witnesses, and by them related to the jury. In addition to the foregoing the testimony of the coroner concerning such remarks made by the child showed they were elicited by talking with the child out of the presence of the mother, and then allowed in evidence, which, of course, was not admissible, and was highly prejudicial. We conclude, therefore, that the statements of the child were neither admissible on the ground of the *res gestae,* nor as tending to create an implied admission upon the part of the defendant." 401 Ill. 68, 73-75, 81 N.E.2d 485.

*Willson* considered but does not forever preclude the admission into evidence of the *res gestae* utterances of a child who would otherwise be incompetent to testify before the jury. In *Willson,* unlike the instant case, the child's utterances were not contemporaneous with the commission of the crime and could not be considered spontaneous or *res gestae* utterances.

■■ In the instant case, the trial court permitted Ms. Farren to testify as to her young son's responses to questioning within minutes of the commission of this crime. In our opinion, those responses were indeed utterances which could be characterized as spontaneous or *res gestae* declarations. (Compare *People v. Damen* (1963), 28 Ill. 2d 464, 470-74, 193 N.E.2d 25, and *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064, with *People v. Taylor* (1971), 48 Ill. 2d 91, 96-97, 268 N.E.2d 865, and *Ketcham v. State* (1959), 240 Ind. 107, 109-14, 162 N.E.2d 247, 248-50.) As in *Damen,* the fact that the spontaneous declaration was in response to another person's questioning does not destroy its spontaneity. Accordingly, the court did not abuse its discretion by permitting Ms. Farren to testify to those spontaneous or *res gestae* statements, even though her son was later found to be incompetent to testify. *McCann; Haley.*

As an alternative resolution of the first issue, it seems clear to us that the event being related by the victim here was, considering his age, a sufficiently startling occurrence to make it likely that he would tell the truth to his mother. It is also unlikely that a child of that age would in such a short period of time fabricate the statement attributed to him. We make this alternative resolution with the knowledge that some writers believe that use of the term *res gestae* inhibits an understanding analysis of the hearsay problem. (*People v. Poland* (1961), 22 Ill. 2d 175, 180, 174 N.E.2d 804, 807; Cleary, Handbook of Illinois Evidence §17.24, at 291-92 (2d ed. 1963); McCormick, Evidence §272, at 578 (1954) ("From the mists of *res gestae * * *.*") In essence, we deem the victim's statements in this case to be both trustworthy and extremely probative of guilt. Their exclusion, we believe, would be manifestly unjust.

Defendant also contends that he was denied a fair trial as a result of the alleged incompetence of his trial counsel. To support this contention, defendant points to his counsel's failure to file a post-trial motion and his inexplicable comment during the opening statements: "I think we have got our station to the trying. I hold a losing argument."

■■ Analysis of an attorney's exercise of judgment or discretion in choosing trial tactics is beyond the scope of appellate review. (*People v. Greenlee* (1976), 44 Ill. App. 3d 536, 539-40, 358 N.E.2d 649.) In addition, our review of the record here does not disclose that the defendant was prejudiced or denied a fair trial by his counsel's opening statement or trial tactics, nor can it be said that his representation reduced the trial to a sham or farce. *People v. Jackson* (1976), 41 Ill. App. 3d 816, 822, 354 N.E.2d 643; *People v. Carter* (1976), 41 Ill. App. 3d 425, 428-29, 354 N.E.2d 482.

■■ Defendant next contends that Ms. Farren's testimony concerning her belief that defendant planned to sell their landlady's stereo and defendant's beating of her when she questioned him about his intention to sell the stereo were improperly brought out by the State on redirect examination. On cross-examination by defense counsel, however, counsel elicited Ms. Farren's testimony that she and defendant had argued on the day preceding defendant's commission of the crime. The State's questions on redirect examination merely brought out the reason for and content of the couple's arguments on that day. The court did not err in permitting this redirect examination because the State, on redirect, has a right to question the witness on matters brought out during cross-examination. *People v. Kostos* (1961), 21 Ill. 2d 496, 500, 173 N.E.2d 466.

■■ Finally, defendant contends that the State's reference in closing argument to the grounds for Farren's divorce from the defendant was not based on evidence presented to the jury. In *People v. Beier* (1963), 29 Ill.

2d 511, 517, 194 N.E.2d 280, our supreme court held that such statements could not be made in closing argument to the jury. In *Beier*, the supreme court held that the statements clearly prejudiced the defendant.

In the instant case, defendant's counsel himself elicited Ms. Farren's testimony that she had filed a divorce complaint against defendant which alleged that he hit her. While the prosecutor, in his closing argument, clearly went beyond the evidence by commenting on the fact that the parties' divorce was on grounds of mental or physical cruelty, at least the factual foundation for those grounds was of record. Evidence of prejudice to the defendant resulting from the prosecutor's comments is not contained in the record.

For the foregoing reasons, we affirm defendant's conviction and the sentence imposed for indecent liberties with a child.

Affirmed.

WEBBER, J., concurs.


Mr. PRESIDING JUSTICE GREEN, specially concurring:

I agree with the result reached by the majority and everything stated in the opinion except the court's reliance upon the doctrine of spontaneous or *res gestae* declarations to justify the testimony of Ms. Farren as to her son's responses to her questions.

I agree with the late Justice Harry B. Hershey, author of *Poland*, Professor Edward W. Cleary and the authors of McCormick, Evidence §288, at 686-87 (2d ed. 1972) that the phrase *res gestae* is no longer a useful method of analyzing exceptions to the hearsay rule. To my knowledge, the supreme court has not used this analysis since the *Poland* decision in 1961.

The majority indicate that the mother's testimony of her son's responses would be admissible merely upon a showing that they were explanations of an act that had occurred very recently. However, *Poland, Damen* and the decisions of this court in *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310, and *Jacobs* clearly state that for testimony of such declarations to be admissible, the declarations must also be the result of a startling event.

Here, the evidence showed that at the time the child spoke, he appeared to be upset and afraid to leave his mother. I agree with the majority's alternate disposition of this issue which rules that in view of the child's age there was also sufficient evidence that the child had been startled by the previous occurrence. Thus, the requirements of spontaneity and a startling event required by the cited cases were met.