THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD DEAN LEGGANS, Defendant-Appellant.

Fifth District    No. 78-25

Opinion filed January 8, 1980.

Ralph Ruebner and Rafael Schwimmer, both of State Appellate Defender's Office, of Chicago, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Gerald Dean Leggans, was convicted in two separate jury trials of indecent liberties with a child and the offense of indecent solicitation of a child. Ill. Rev. Stat. 1975, ch. 38, pars. 11—4 and 11—6, respectively.

At the first trial the jury found the defendant guilty of indecent solicitation of a child but was unable to reach a verdict on the three remaining counts. As a result of the second trial, defendant was convicted of indecent liberties with a child. He was sentenced to 360 days for indecent solicitation of a child and 25 to 75 years for indecent liberties, the sentences to run concurrently. On appeal defendant contends (1) that certain testimony of four witnesses was improperly admitted hearsay, (2) that his guilt was not established beyond a reasonable doubt and (3) that his sentence was excessive.

The State presented evidence that between May 14, 1977, and June 3, 1977, the defendant committed acts of fellatio and anal intercourse upon the 9-year-old male complainant and solicited the complainant to perform fellatio upon him. These acts took place both in the defendant's sister's home in DeSoto and the defendant's mother's home in Murphysboro.

The complainant testified that the defendant, whom he knew as Butch, sometime in mid-May, 1977, came to his mother and stepfather's home where the complainant lived with his mother, stepfather, two brothers and sister. The complainant remembered that his mother, himself and the other children went with the defendant to the defendant's mother's home in Murphysboro where they spent the night. The defendant, complainant's mother and the children then went to DeSoto to the home of defendant's sister, Kathryn Persutti. The complainant testified that he spent the night four or five times at the Persuttis' home in DeSoto. The complainant also testified to having stayed alone with the defendant at the defendant's mother's home in Murphysboro. The complainant testified that while staying in DeSoto he had slept on the living room couch with the defendant and the defendant had "played nasty" with him. The complainant then explained that the defendant performed fellatio on him and requested the complainant perform fellatio on him, which the complainant refused to do. The complainant also testified to anal intercourse having been performed on him by the defendant while staying with the defendant in Murphysboro. The complainant explained that he did not tell his mother about the incidents because Butch had told him not to tell anyone. The complainant testified that he later told his friends, Walter Cobb and Danny Yount, about the incidents and also discussed them with Ed Berger, a social worker, Larry Tincher, assistant chief of police for Murphysboro, and Dr. Sidney Smith.

The complainant's mother testified that she and Butch Leggans had

lived together during the summer of 1974 and the affair had ended when he left for Texas. She testified that on May 14, 1977, upon defendant's return to Illinois, he came to see her at her home. She then testified that she and Butch, together with her children, went to the Persuttis in DeSoto for the weekend. She again went to DeSoto with the children the following weekend. Complainant's mother also recalled that sometime after May 23 the complainant had spent a week alone with the defendant at his mother's home in Murphysboro. Complainant's mother confirmed that the complainant and defendant had both slept on the living room couch while in DeSoto. She testified, over defense counsel's objection, that the complainant told her that Butch was "playing nasty" with him and he would run away from home if the defendant was not kept away from him. She testified that on May 23 she arranged to meet with Ed Berger, her case worker at the Department of Children and Family Services, to discuss reconciling with her husband and her concern over defendant's conduct toward her son. Mr. Berger recalled this meeting with complainant's mother and also recalled seeing the complainant with the defendant on May 31 at the home of defendant's mother. He testified that, in light of what the complainant's mother had told him on May 23, he became concerned about the child and contacted the State's Attorney's office that same day. On June 8, Ed Berger arranged a meeting with the complainant and Larry Tincher, a police officer. Mr. Berger testified, over objection, to the complainant's description of the sexual activity that had taken place with the defendant.

On June 9, the complainant was examined by Dr. Sidney Smith, a pediatrician. Dr. Smith testified that he found no physical evidence of sexual activity but stated that the complainant described incidents involving fellatio and anal intercourse with the defendant.

Two of the complainant's friends, Walter Cobb and Danny Yount, also testified, over objection, to the complainant's description of an incident involving anal intercourse with the defendant.

The defendant produced evidence attempting to demonstrate that complainant's mother was prone to accusing men of engaging in sexual activities with her children. Leonard Kelso and his son, Dale, testified that the complainant's mother had accused Leonard Kelso of attempting to rape her daughter. Kathy Vanhoy and Linda Horn testified that complainant's mother had at one time told them that she was going to bring charges against her present husband for molesting her daughter.

Kathryn Persutti, the defendant's sister, testified that the complainant, his mother and her other children had stayed at her home in DeSoto. Both she and her sister, who was also staying at the Persuttis, confirmed that the complainant had slept on the couch with the defendant, but both stated this arrangement was at complainant's mother's suggestion and not at

defendant's suggestion as the complainant's mother testified. Neither sister noticed anything unusual going on between the defendant and complainant.

■■ The defendant first contends that it was error for the trial court to admit the testimony of the complainant's mother, Walter Cobb, Danny Yount, and Ed Berger as to the sexual details of the incidents the complainant related to each of these individuals. We agree with the defendant that the testimony of these witnesses does not fall within the spontaneous declaration exception nor the corroborative complaint exception to the hearsay rule.

Complainant's statements to his mother, Cobb, Yount and Berger lack the essential elements of spontaneity and absence of time to reflect and fabricate; therefore, they do not qualify as spontaneous declarations. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) Further, such statements cannot be said to be admissible under the "corroborative complaint" exception to the hearsay rule because no details regarding the crime or identity of the assailant may be disclosed thereunder. (*People v. Robinson*.) It is our conclusion, however, that the rationale of *Robinson* is applicable to the instant case.

The court in *Robinson*, after determining that similar testimony was not admissible as an exception to the hearsay rule, held that no reversible error resulted from the admission of such hearsay testimony.

*Robinson* was an appeal from a conviction of rape, armed robbery and deviate sexual intercourse. The court there found that it was not reversible error to admit testimony of the complainant's sister and a police officer as to the complainant's statements to them about the rape. The court noted that the complainant was present in court, had testified and defense counsel had an opportunity to cross-examine her. Further, the court observed that the hearsay evidence was merely cumulative and that no fact regarding the crime was introduced through the use of the hearsay testimony which was not later established through the complainant's own testimony.

In the instant case, the out-of-court declarant, the complainant, was present in court and subject to cross-examination. No facts were introduced through the hearsay testimony which were not initially established by the complainant's own testimony. (*Cf. People v. Strubberg* (1978), 61 Ill. App. 3d 521, 378 N.E.2d 191.) Therefore, we find that it was not reversible error to admit the testimony of the witnesses with regard to their conversations with the complainant.

The defendant next contends that his conviction was against the manifest weight of the evidence. The complainant testified that "four or five times" he spent the night in DeSoto, which statement was confirmed by his mother's testimony that she and the children spent two weekends in DeSoto. Both complainant and his mother recalled the complainant spending a week alone with the defendant in Murphysboro. According to

complainant's mother, this was sometime after May 23. This testimony was corroborated by Ed Berger, who testified to having seen the complainant with the defendant at defendant's mother's home in Murphysboro on May 31. The defendant's sister also testified that complainant, his mother and the other children had spent weekends in DeSoto.

Further, the complainant consistently repeated the incident to his friends, a social worker and a doctor. The defendant argues that this cannot be taken as substantial corroboration since the complaints were improperly admitted into evidence. In light of our disposition of that issue, the complainant's statements were properly admitted and sufficiently corroborated his complaint.

■■ Although there are inconsistencies between the testimony of the witnesses for the State and the defense, the jury is charged with the responsibility to determine controverted facts. This court held in *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528, that it is the function of the trier of fact to weigh the testimony, judge the credibility of the witnesses and determine factual matters in debatable sets of circumstances. The court further stated in *Wade* that a reviewing court has neither the duty nor the privilege to substitute its judgment as to the weight of disputed evidence or credibility of witnesses for that of the trier of fact.

■■ In spite of the fact that there were inconsistencies as to the details of the offense in the instant case, the complainant's testimony established all the elements of the offense, and this court will not substitute its judgment for that of the jury. *Cf. People v. Bolyard* (1974), 23 Ill. App. 3d 497, 319 N.E.2d 265.

■■ Defendant's final contention is that his sentence of 25 to 75 years was excessive. The imposition of a sentence is a matter of judicial discretion and, absent an abuse of discretion, the sentence of the trial court will not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In light of the trial court's consideration of the defendant's character, prior record, rehabilitative potential and the nature of the offense, we are constrained to say that the trial court did not abuse its discretion in sentencing the defendant.

For the foregoing reasons, the convictions of defendant and his sentences are affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.[1]

---

[1] Presiding Justice Charles E. Jones replaced Justice Peyton H. Kunce, who retired after oral argument.